# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GATEWAY, INC., formerly known as GATEWAY 2000, INC., a corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GULF INSURANCE COMPANY, a corporation; TRAVELERS INDEMNITY COMPANY, a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 10cv1720-WQH-JMA<br><br>ORDER |

HAYES, Judge:

The matters before the Court are the Motion for Summary Judgment filed by Defendant Travelers Indemnity Company ("Travelers"), ECF No. 23, and the Motion for Summary Judgment filed by Plaintiff Gateway Inc. ("Gateway"), ECF No. 24.

**I.   Background**

On July 7, 2010, Gateway initiated this action by filing a Complaint against Defendants Travelers and Gulf Insurance Company ("Gulf") in San Diego County Superior Court. ECF No. 1, Ex. 1. The Complaint alleges a single claim for breach of an insurance contract.

On August 17, 2010, Travelers removed the action to this Court, alleging diversity jurisdiction.[1] ECF No. 1.

On April 13, 2011, the parties filed a Joint Statement of Stipulated Facts, accompanied by Exhibits. ECF No. 18.

On May 2, 2011, the parties filed their respective motions for summary judgment. ECF Nos. 23, 24-25. On June 10, 2011, each party filed an opposition to the opposing party's

---

[1] The Notice of Removal states that, in July 2005, Gulf merged into Travelers, and Gulf ceased to exist. ECF No. 1 ¶ 3. Gateway does not dispute this assertion. Accordingly, the Court collectively refers to Travelers and Gulf as "Travelers."

motion for summary judgment. ECF Nos. 29, 30. On June 24, 2011, each party filed a reply brief. ECF Nos. 31, 32.

On August 12, 2011, the Court conducted oral argument on the motions for summary judgment. ECF No. 34.

**II.    Facts**

    **A.    Facts**

Gateway is a publicly traded company which manufactures and sells computer hardware to consumers. Stip. Facts ¶ 1, ECF No. 18.

Lloyd's of London issued Directors, Officers and Company Liability Policy No. 509/QB335898 (the "Primary Policy") effective for the period October 1, 1998 to October 1, 2001 (the "Policy Period"). *Id*. ¶ 2. Subject to its terms, conditions, and limitations, the Primary Policy provided up to $10 million in coverage. *Id*.

Effective for the Policy Period, Zurich-American Insurance Company ("Zurich") issued Directors and Officers Liability and Reimbursement Excess Policy No. DOC 8388226 04 (the "First Excess Policy"). *Id*. ¶ 4. Subject to its terms, conditions, and limitations, the First Excess Policy provided up to $10 million in coverage excess of the Primary Policy's $10 million in underlying insurance. *Id*.

Effective for the Policy Period, Travelers issued Excess Directors and Officers Liability and Company Indemnification Insurance Following Form Policy No. GB5840592 (the "Travelers Second Excess Policy" and, together with the Primary Policy and First Excess Policy, the "Policies"). *Id*. ¶ 6. Subject to its terms, conditions, and limitations, the Travelers Second Excess Policy provides up to $15 million of coverage excess of the Primary and First Excess Policies' combined $20 million limit of liability in underlying insurance. *Id*.

The respective Limits of Liability of the Primary Policy and the First Excess Policy have been exhausted through payment of covered Loss.[2] *Id*. ¶ 8.

Following issuance of the Policies, certain Claims were brought against Insureds that

---

[2] Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Primary, First Excess, or Travelers Second Excess Policy.

implicated the Policies including, but not limited to, *SEC v. Todd*, No. 3:03-cv-02230 (S.D. Cal., filed Nov. 13, 2003) (the "SEC Lawsuit"). *Id.* ¶ 9. The SEC Lawsuit was filed against John J. Todd, Robert D. Manza, and Jeffrey Weitzen (the "Individual Insureds"), who constitute "Directors and Officers" under the Travelers Second Excess Policy. *Id.* ¶ 10. Gateway was not named as a defendant in the SEC Lawsuit. *Id.*

As of February 21, 2011, Travelers has advanced $12,174,235.80 to or on behalf of Gateway and/or the Individual Insureds pursuant to Insuring Clause B of the Primary Policy for certain Loss—specifically, certain Costs, Charges and Expenses incurred by or on behalf of the Individual Insureds. *Id.* ¶ 11. As of February 21, 2011, the Travelers Second Excess Policy's remaining Limit of Liability was $2,825,764.20. *Id.* ¶ 12.

Between 2004 and 2007, Gateway retained the law firm of Morrison & Foerster LLP ("Morrison & Foerster") in connection with the SEC Lawsuit and other matters. *Id.* ¶ 13. Gateway also retained Morrison & Foerster to represent certain of Gateway's current and former employees who were not parties to the SEC Lawsuit and against whom no Claim was made. *Id.* ¶ 14. The current and former employees were compelled by subpoena to give deposition testimony in the SEC Lawsuit as fact witnesses. *Id.*

Morrison & Foerster had represented Gateway in 2001 in connection with an SEC investigation of Gateway, which culminated in Gateway reaching a settlement with the SEC and the SEC instituting the SEC Lawsuit against the Individual Defendants. Call Decl. ¶¶ 4-5, ECF No. 24-3. Gateway chose to engage Morrison & Foerster in 2004 because "the Morrison & Foerster team had had extensive knowledge of the issues and facts that carried over into the SEC's claims against the Individual Defendants in the SEC Lawsuit," and "the parties and their counsel could leverage the prior work done by Morrison & Foerster." *Id.* ¶ 6. Prior to engaging Morrison & Foerster in 2004, Gateway engaged in discussions with Zurich, and "Zurich consented to coverage [pursuant to the Primary Policy and the First Excess Policy] of Morrison & Foerster's fees for these services." *Id.* ¶ 7. "A key in those discussions was the fact that Morrison & Foerster's involvement would likely serve to reduce the overall costs of defense asserted by the Individual Defendants under the Policies because counsel for the

Individual Defendants could make quick and efficient use of Morrison & Foerster's extensive knowledge, rather than having to invest similar, redundant effort to gain that knowledge." *Id.*

In representing certain of Gateway's current and former employees who were not parties to the SEC Lawsuit, as described above, Morrison & Foerster generated certain invoices (the "Morrison Invoices"), which Morrison & Foerster sent to Gateway and requested payment therefor. Stip. Facts ¶ 15, ECF No. 18. The total amount of the Morrison Invoices was $553,875.40 (the "Amount at Issue"). *Id.* ¶ 16.

Gateway forwarded the Morrison Invoices to Travelers and has requested that Travelers pay the Amount at Issue under the Travelers Second Excess Policy. *Id.* ¶ 19. Travelers denied coverage for the Morrison Invoices and the Amount at Issue. *Id.* ¶ 20. By this Lawsuit, Gateway seeks to recover the Amount at Issue from Travelers. *Id.* ¶ 21.

**B.    Policies**

The Travelers Second Excess Policy incorporates the terms of the Primary Policy, including its Insuring Clauses. *See* Jt. Ex. 3 at J045, ECF No. 18-2.

The Insuring Clause of the Primary Policy provides coverage as follows:

> A. Underwriters shall pay on behalf of the **Directors and Officers Loss** resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for an **Individual Act**.
>
> B. Underwriters shall pay on behalf of the **Company Loss** which the **Company** is required or permitted to pay as indemnification to any of the **Directors and Officers** resulting from any **Claim** first made against the **Directors and Officers** during the **Policy Period** for an **Individual Act**.
>
> C. Underwriters shall pay on behalf of the **Company Loss** resulting from any **Claim** first made against the **Company** during the **Policy Period** for a **Corporate Act**.

Jt. Ex. 1 at J006, ECF No. 18-1 (emphasis in original).

The Definitions section of the Primary Policy defines certain relevant terms as follows:

> B. "**Assureds**" means the **Company** and the **Directors and Officers**.
>
> C. "**Claim**" means:
>
> 1. any written or oral demand for damages or other relief against any of the **Assureds**; or
>
> 2. any civil, criminal, administrative or regulatory proceeding initiated against any of the **Assureds**, including:...

        (c)    any formal investigatory proceeding before the Securities and Exchange Commission or any similar federal, state or local governmental body with jurisdiction over any **Securities Law Violation**....

G.    "**Costs, Charges and Expenses**" means any reasonable and necessary legal fees and expenses incurred by the **Assureds** in defense of any **Claim** and cost of attachment or similar bonds....

H.    "**Directors and Officers**" means:

    1.    all persons who were, now are, or shall be directors or officers of the **Company** and all persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

    2.    to the extent any **Claim** is for ... a **Securities Law Violation**, all persons who were, now are, or shall be employees of the **Company**; and

    3.    the lawful spouse of any of the persons set forth in the above provisions of this definition....

L.    "**Loss**" means damages, judgments, settlements and **Costs, Charges and Expenses** incurred by any of the **Assureds**....

*Id*. at J006-07, J009 (emphasis in original).

The definition of "Directors and Officers" was amended by Endorsement Number 7, which states:

> In consideration of the premium charged for the Policy, it is hereby understood and agreed that Clause **II. DEFINITIONS H.**, is amended by the addition of the following:
>
>     4.    Managers of Limited Liability Companies,
>
>     5.    employees of the **Company**. However, coverage for employees who are not directors or officers shall only apply when an employee is named as a co-defendant with a director or officer of the **Company**,
>
>     6.    statutory auditor(s) in Japan.

*Id*. at J024 (emphasis in original).

## III.    Standard of Review

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material

1  fact is one that is relevant to an element of a claim or defense and whose existence might affect
2  the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S.
3  574, 586 (1986). The materiality of a fact is determined by the substantive law governing the
4  claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex*
5  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes over irrelevant or unnecessary facts will
6  not preclude a grant of summary judgment. *See T.W. Elec. Serv., Inc. v. Pacific Elec.*
7  *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 248).

8        The moving party has the initial burden of demonstrating that summary judgment is
9  proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). The burden then shifts
10 to the opposing party to provide admissible evidence beyond the pleadings to show that
11 summary judgment is not appropriate. *See Celotex*, 477 U.S. at 322, 324. The opposing
12 party's evidence is to be believed, and all justifiable inferences are to be drawn in her favor.
13 *See Anderson*, 477 U.S. at 256. To avoid summary judgment, the opposing party cannot rest
14 solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th
15 Cir. 1986). Instead, the nonmovant must designate which specific facts show that there is a
16 genuine issue for trial. *See Anderson*, 477 U.S. at 256. "[T]he mere fact that the parties make
17 cross-motions for summary judgment does not necessarily mean that there are no disputed
18 issues of material fact and does not necessarily permit the judge to render judgment in favor
19 of one side or the other." *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975); *see also*
20 *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1038 n.6 (9th Cir. 2000) (same).

21 **IV.**   **Contentions of the Parties**

22     **A.**   **Gateway's Contentions**

23     Gateway contends:

24         Because the SEC Investigation was a 'Claim' for a 'Securities Law Violation,' the Employees [represented by Morrison & Foerster] qualify as
25 'Directors and Officers' for purposes of Insuring Clause B because they 'were, now are, or shall be employees of the Company.' [Jt. Ex. 1] at J007, II.H.2.
26 Thus, when Gateway paid Morrison & Foerster to represent the Employees in connection with the SEC Lawsuit, it was incurring 'Loss' by indemnifying 'any
27 of the Directors and Officers [the Employees] resulting from any Claim [the SEC Investigation] first made against the Directors and Officers [Todd, Manza,
28 and Weitzen] during the Policy Period for an Individual Act,' as provided in Insuring Clause B....

>  Thus, Insuring Clause B provides for reimbursement of Gateway's payment of legal expenses on behalf of the Employees in their capacity of 'Directors and Officers,' as that term is defined by the Primary Policy itself. Travelers breached this clause by refusing to reimburse these expenses....
>
>  Endorsement 7 to the Primary Policy adds to the definition of 'Directors and Officers' in paragraph H as follows: '5. employees of the Company. However, coverage for employees who are not directors or officers shall only apply when an employee is named as a co-defendant with a director or officer of the Company... .' Jt. Ex. 1, J024.
>
>  Travelers never referenced sub-paragraph H.5 in declining reimbursement of the Morrison & Foerster invoices. Moreover, sub-paragraph H.2 is more specific than sub-paragraph H.5 in that H.2 provides that employees are considered 'Directors and Officers' specifically for purposes of securities law violation claims. *Id.* at J007. The more specific sub-paragraph H.2 controls here because in interpreting insurance contracts, specific provisions control over more general provisions, 'even though the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates.' *Kavruck v. Blue Cross of Cal.*, 108 Cal. App. 4th 773, 781 (2003) [quotation omitted]. In sum, Travelers is refusing reimbursement based upon a coverage limitation which simply does not apply here.
>
>  Additionally, '[w]hereas coverage clauses are interpreted broadly *so as to afford the greatest possible protection to the insured*, exclusionary clauses are interpreted narrowly against the insurer.' *Gen. Ins. Co. Of Am. v. City of Belvedere*, 582 F. Supp. 88, 89 (N.D. Cal. 1984) (emphasis added) (citing *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800 (1982)). Thus, Insuring Clause B and the definition of 'Directors and Officers' in subparagraph H.2 should be interpreted broadly to include coverage for reimbursement of the legal expenses incurred in representing the Employees under the circumstances of this case. On the other hand, the exclusionary provision contained in subparagraph H.5's definition of 'Directors and Officers' should be construed narrowly against Travelers and does not apply in this case....

Gateway Mem. Supp. Mot. Summ. J. at 15-16, ECF No. 24-1 at 20-21.

Gateway contends that, "[a]lternatively, Morrison & Foerster's representation of the employees was reasonably related to the defense of the Individual Defendants, such that these legal expenses should be reimbursed." *Id.* at 17. Gateway contends:

>  Travelers' decision to reimburse these legal expenses Gateway incurred in indemnifying Todd, Manza and Weitzen in the SEC lawsuit, but not the Morrison & Foerster invoices, was an inappropriate form of 'allocation' of Gateway's defense costs between the directors and officers on the one hand, and the Employees on the other. Allocation of defenses costs among the claims and parties involved may be appropriate where claims covered under a D & O policy are joined in litigation with other, uncovered claims. However, Morrison & Foerster's services were reasonably related to the defense of the Individual Defendants, such that Morrison & Foerster's fees were covered under the Policies....
>
>  Morrison & Foerster's representation of the Employees was reasonably related to the defense of the Individual Defendants because of Gateway's

obligations to cooperate with the SEC in the SEC Lawsuit. When the SEC indicated that it intended to interview Gateway's current and former employees in connection with its claims against the Individual Defendants, Gateway cooperated by providing those individuals with legal representation in order to prepare them for and represent them in those encounters. The Morrison & Foerster team had already worked with many of these individuals during the SEC Investigation, such that it was reasonable and financially prudent for Morrison & Foerster to remain involved in that capacity.

*Id*. at 17, 19 (citations omitted).

Gateway contends that Gateway "reasonably expected" that the Morrison & Foerster fees would be covered:

[T]he general rule is that courts should protect the reasonable expectations of an insured under the policy. Gateway reasonably expected that the Morrison & Foerster fees would be covered given the discussions Gateway had with Zurich [the issuer of the First Excess Policy] prior to engaging Morrison & Foerster in connection with the SEC Lawsuit. Gateway and Morrison & Foerster specifically discussed with Zurich the benefits of Morrison & Foerster's continued involvement, pointing out that Morrison & Foerster's involvement would likely serve to reduce the overall costs of defending the Individual Defendants because their attorneys could leverage Morrison & Foerster's extensive knowledge of the underlying issues and claims, rather than having to invest redundant effort to gain that knowledge on their own. Zurich then consented to Morrison & Foerster's continued involvement, such that Gateway reasonably expected that Morrison & Foerster's invoices would be reimbursed in full under the Policies.

*Id*. at 20 (citations omitted).

**B.     Travelers' Contentions**

Travelers contends:

[T]he clear and unambiguous language of Insuring Clause B states that coverage is only available for Loss that Gateway is required or permitted to pay as indemnification to any Directors or Officers *resulting from any Claim made against these Directors or Officers*. Gateway has failed to establish ... that a Claim was ever asserted against the Employees. Absent a Claim against the Employees, the fundamental threshold for coverage under the Policy simply does not exist.

Travelers' Resp. Pl.'s Mot. Summ. J. at 2, ECF No. 29 at 2 (emphasis in original). Travelers contends:

Furthermore, despite Gateway's contentions otherwise, Insuring Clause B cannot provide coverage for the Morrison & Foerster Invoices because the Employees do not constitute 'Directors and Officers' within the meaning of the Policy. While the term 'Directors and Officers' is defined in the Primary Policy to include employees to the extent that any Claim is for a Securities Law Violation (J.S. at Ex. 1, J007), Endorsement Number 7 to the Primary Policy expressly modifies that definition to state: 'However, coverage for employees who are not directors or officers shall only apply when an employee is named

> as a co-defendant with a director or officer of the Company....' (J.S. at Ex. 1, J024) (emphasis added). Here, none of the Employees who testified pursuant to the Subpoenas were named as co-defendants with any of the Directors and Officers who were named as defendants in the Lawsuit. As such, the Employees are not considered 'Directors and Officers' within the meaning of the Policy and Insuring Clause B is inapplicable to the Morrison & Foerster Invoices.

*Id.* at 5.

Travelers contends:

> [T]he 'reasonably related' test and the only case law relied upon by Gateway simply have no application to the issue in this case. The test only applies when insureds and non-insureds and/or covered and non-covered causes of action exist in a Claim. In these circumstances, and as in the only cases relied upon by Gateway, courts reason that an insurer may have to pay defense costs that will benefit, for example, uninsured defendants if the defense costs are reasonably related to the defense costs the insurer is already obligated to pay. There is no precedent that applies the 'reasonably related' test to the defense of third-party witnesses against whom there is no Claim.

*Id.* at 2.

Travelers contends:

> [I]n a final attempt to manufacture coverage where none exists, Gateway urges the Court to find that the Morrison & Foerster Invoices are covered under the Policy because Gateway 'reasonably expected' that they would be covered based upon conversations Gateway had with an entirely different insurance company. However, in California, a Court may only consider an insured's expectations of coverage when policy language is determined to be ambiguous. That is not the case here....

*Id.* at 3.

## V.   Discussion

"Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821 (1990) (citing Cal. Civ. Code § 1636).[3] "Such intent is to be inferred, if possible, solely from the written provisions of the contract." *Id.* at 822 (citing Cal. Civ. Code § 1639). "'[I]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, the objectively reasonable expectations of

---

[3] The parties agree that California substantive law governs this diversity action.

the insured." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264-65 (1992) (quoting Cal. Civ. Code § 1649). "[I]f this rule does not resolve the ambiguity, ... then [courts] resolve it against the insurer." *Id.* at 1265 (citing *AIU Ins. Co.*, 51 Cal. 3d at 822); *see also AIU Ins. Co.*, 51 Cal. 3d at 822 ("In the insurance context, we generally resolve ambiguities in favor of coverage. Similarly, we generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured.").

### A. Definition of "Officers and Directors"

It is undisputed that each of the three Individual Insureds (John J. Todd, Gateway's former Chief Financial Officer; Robert D. Manza, Gateway's former Chief Financial Officer and Controller; and Jeffrey Weitzen, Gateway's former Chief Operating Officer and Chief Executive Officer) constitute "Directors and Officers" under the Primary Policy.

The parties dispute whether the Gateway employees represented by Morrison & Foerster, who were not parties to the SEC Lawsuit and who were compelled by subpoena to give deposition testimony as fact witnesses, constitute "Directors and Officers" under the Primary Policy. In relevant part, the term "Directors and Officers" is defined in the Primary Policy as: "2. to the extent any Claim is for ... a Securities Law Violation, all persons who were, now are, or shall be employees of the Company...." Jt. Ex. 1 at J007, ECF No. 18-1 (sub-paragraph II.H.2.) (emphasis omitted).[4] This definition was "amended by the addition of the following" sub-paragraph: "5. employees of the Company. However, coverage for employees who are not directors or officers shall only apply when an employee is named as a co-defendant with a director or officer of the Company...." *Id.* at J024 (sub-paragraph II.H.5.) (emphasis omitted).

Gateway contends that sub-paragraphs II.H.2 and II.H.5 are independent provisions, and the sentence beginning with "However ..." in sub-paragraph II.H.5. limits the preceding phrase, "employees of the Company." Travelers contends that the sentence beginning with "However ..." in sub-paragraph II.H.5. operates to limit the definition set forth in sub-paragraph II.H.2.

---

[4] It is undisputed that the SEC Lawsuit constitutes a "Claim for ... a Securities Law Violation." Jt. Ex. 1 at J007, ECF No. 18-1 (emphasis omitted).

1    The Court finds that the clear and explicit reading of the Primary Policy, as applied to
2 the facts of this case, is that sub-paragraphs II.H.2 and II.H.5 are independent provisions, and
3 the Gateway employees represented by Morrison & Foerster constitute "Directors and
4 Officers" pursuant to sub-paragraph II.H.2. Alternatively, the Court finds the parties'
5 competing interpretations of the "Directors and Officers" definition to highlight an ambiguity
6 in the Primary Policy. The Court reads this ambiguity in favor of Gateway in order to protect
7 "the objectively reasonable expectations of the insured." *Bank of the West*, 2 Cal. 4th at 1265
8 (quotation omitted).

### B.     Insuring Clause B

10    Of the three Insuring Clauses in the Primary Policy, Gateway relies primarily upon
11 Insuring Clause B as the basis for coverage of the Morrison Invoices. Insuring Clause B states:
12 "Underwriters shall pay on behalf of the Company Loss which the Company is required or
13 permitted to pay as indemnification to any of the Directors and Officers resulting from any
14 Claim first made against the Directors and Officers during the Policy Period for an Individual
15 Act." Jt. Ex. 1 at J006, ECF No. 18-1 (emphasis omitted).

16    Gateway contends that the Morrison Invoices are covered based upon the following
17 reading of Insuring Clause B: "[W]hen Gateway paid Morrison & Foerster to represent the
18 Employees in connection with the SEC Lawsuit, it was incurring 'Loss' by indemnifying 'any
19 of the Directors and Officers [the Employees] resulting from any Claim [the SEC
20 Investigation] first made against the Directors and Officers [Todd, Manza, and Weitzen] during
21 the Policy Period for an Individual Act....'" Gateway Mem. Supp. Mot. Summ. J. at 15, ECF
22 No. 24-1 at 20. Alternatively, Gateway contends that the SEC subpoenas to the Gateway
23 employees constitute "Claim[s] first made against the Directors and Officers [i.e., the Gateway
24 employees]." Jt. Ex. 1 at J006, ECF No. 18-1; *see* Gateway Reply Mem. Supp. Mot. Summ.
25 J. at 3, ECF No. 32 at 4 ("[T]he subpoenas to the Employees constitute 'claims' both under the
26 express terms of the Primary Policy, and under case law.") (citing, inter alia, Jt. Ex. 1 at J006,
27 ECF No. 18-1 (definition of "Claim"); *Polychron v. Crum & Forster Ins. Cos.*, 916 F.2d 461,
28 463 (8th Cir. 1990) ("The function of a subpoena is to command a party to produce certain

documents and therefore constitutes a 'claim' against a party.")).

Travelers contends that "the clear and unambiguous language of Insuring Clause B states that coverage is only available for Loss that Gateway is required or permitted to pay as indemnification to any Directors or Officers *resulting from any Claim made against these Directors or Officers*. Gateway has failed to establish ... that a Claim was ever asserted against the Employees." Travelers' Resp. Pl.'s Mot. Summ. J. at 2, ECF No. 29 at 2 (emphasis in original).

The Court finds that Gateway and Travelers have each advanced a reasonable interpretation of the application of Insuring Clause B to the facts of this case, and the Primary Policy is ambiguous on this issue. The Court reads this ambiguity in favor of Gateway in order to protect "the objectively reasonable expectations of the insured." *Bank of the West*, 2 Cal. 4th at 1265 (quotation omitted).

Accordingly, Gateway's Motion for Summary Judgment is granted, and Travelers' Motion for Summary Judgment is denied.[5]

## VI.  Conclusion

IT IS HEREBY ORDERED that Gateway's Motion for Summary Judgment is GRANTED, ECF No. 24, and Travelers' Motion for Summary Judgment is DENIED, ECF No. 23. No later than ten (10) days from the date of this Order, Gateway shall file a proposed judgment, and e-mail a copy of the proposed judgment in WordPerfect or Word format to efile_hayes@casd.uscourts.gov. No later than seven (7) days after the proposed judgment is filed, Travelers may file a response to the proposed judgment.

DATED: August 15, 2011

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge

---

[5] The Court does not reach Gateway's alternative contentions that Insuring Clause C provides for coverage of the Morrison Invoices, and, even if the Primary Policy does not provide for coverage of the Morrison Invoices, "Morrison & Foerster's representation of the employees was reasonably related to the defense of the Individual Defendants, such that these legal expenses should be reimbursed." Gateway Mem. Supp. Mot. Summ. J. at 17, ECF No. 24-1 at 22.